

FILED

NOV - 5 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT...

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JOHN DOE,

        Petitioner

   v.

DONALD RUMSFELD, Secretary
of Defense, et al,

        Respondents.

_____/

NO. CIV. S-04-2080 FCD KJM

MEMORANDUM AND ORDER

----oo0oo----

    Late in the day on Friday October 1, 2004, petitioner filed a complaint and application for Temporary Restraining Order seeking to prevent his deployment to prevent his deployment to Iraq with his unit of the Army National Guard of the United States ("National Guard").  On October 5, 2004, the court denied petitioner's application for a Temporary Restraining order to

1

24

1  prevent his deployment to Fort Brag for training on October 5,

2  2004.[1]  This matter now is before the court on petitioner's

3  motion for a preliminary injunction.  Based on petitioner's

4  representation that he will be deployed to Iraq on November 19,

5  2004, the court set hearing on the preliminary injunction motion

6  for November 5, 2004.  After fully reviewing the parties' papers

7  and hearing oral argument from parties' counsel, the court DENIES

8  petitioner's request for a preliminary injunction.

9                          **BACKGROUND**

10     Three days after the attacks on the World Trade Center and

11  the Pentagon, President George W. Bush signed a Proclamation

12  declaring a national emergency "by reason of the terrorist

13  attacks . . . and the continuing and immediate threat of further

14  attacks on the United States."  66 Fed. Reg. 48, 199,

15  Presidential Proclamation 7463 (September 14, 2001).  In the same

16  Proclamation, the President invoked his power under 10 U.S.C. §

17  12302 to call the Ready Reserve, which includes the Army National

18  Guard, to active duty.[2]  Id.  Also on September 14, 2001, the

19  President signed an Executive Order delegating authority to

20  activate reserve units to the secretaries of the armed forces.

21  66 Fed. Reg. 48,201-48,202 (2001), Executive Order 13223

---

22

23     [1]     By random assignment, the case was assigned to this
court; however, I was unavailable the following week.  Pursuant
to the Eastern District's Local Rules, the matter was referred to
24  Judge Levi, who heard and denied the TRO on October 5, 2004.  See
Local Rule 63-122.  Because the Local Rules currently do not
25  provide expressly for case reassignment to the judge who hears an
emergency matter due to the assigned judge's unavailability, the
26  case was not reassigned and is before this court.

27     [2]     The President has renewed annually the declaration of
national emergency.  See 67 Fed. Reg. 58, 317; 68 Fed. Reg.
28  53,665; 69 Fed. Reg. 55,313.

1  (September 14, 2004).  In or about March of 2003, the United

2  States invaded Iraq for the purpose of toppling the regime of

3  Saddam Hussein.

4          Shortly, thereafter, on May 1, 2003, petitioner enlisted for

5  a one-year term in the Army National Guard.[3]  In February of

6  2004, petitioner voluntarily reenlisted for a second one-year

7  term.  His current enlistment is scheduled to expire May 1,

8  2004.[4]     On July 23, 2004, plaintiff's National Guard unit

9  received orders to active duty in support of Operation Iraqi

10  Freedom.  Pursuant to those orders, the unit was deployed on

11  October 6, 2004 to Fort Lewis, Washington for approximately 45

12  days of training.  Petitioner, is expected to deploy to Iraq

13  along with his unit for 545 days on November 20, 2004.[5]

14  According to petitioner, at the time he was advise of the

15  mobilization order,  he was told that any members of the unit who

16  did not agree to voluntarily extend their enlistments would be

17  placed under the Army's stop-loss policy.

18          On October 1, 2004, petitioner filed the present action

19

20      [3]     Judge Levi granted petitioner's request to partially
   seal the record in this case with respect to petitioner's
21  identity and to permit petitioner to proceed as John Doe, subject
   to later reconsideration.  (October 5, 2004 Order Permitting
22  Filing of Petition under Pseudonym and Sttement of Petitioner's
   Identifying Information Under Seal; Protective Order; Transcript
23  of October 5, 2004 TRO hearing at 4-7.)

24      [4]     The papers and statements of counsel are in conflict
   regarding whether petitioner's enlistment ends April 30, 2004 or
25  May 1, 2005.  For purposes of this order the court relies on the
   date in petitioner's Memorandum in Support of motion for
26  Temporary Restraining Order, filed October 1, 2004.

27      [5]     It is unclear from the record whether the 545 days of
   active duty are inclusive of, or in addition to, the 45 days of
28  training at Fort Lewis.

1 seeking a temporary restraining order to prevent his deployment

2 with his unit to Fort Lewis, Washington.  The court denied the

3 TRO on October 5, 2004, and petitioner is currently at Fort

4 Lewis, Washington with his unit.  Petitioner now seeks a

5 preliminary injunction to prevent his deployment to Iraq with his

6 unit.  Petitioner claims that the order calling him to active

7 duty for a period beyond his enlistment date, combined with the

8 oral representations that he would be subject to stop-loss,

9 abridges his due process rights, violates the terms of his

10 enlistment contract and is otherwise contrary to federal law.

11 **STANDARD**

12     The Ninth Circuit recognizes two tests for determining

13 whether to grant a preliminary injunction.

14     Under the traditional test, the movant must establish four

15 factors to obtain injunctive relief: 1) a likelihood of success

16 on the merits; (2) a significant threat of irreparable injury;

17 (3) that the balance of hardships favors the applicant; and (4)

18 whether any public interest favors granting an injunction. Raich

19 v. Ashcroft, 352 F.3d 1222, 1227 (9th Cir. 2003).

20     Alternatively, the Ninth Circuit has articulated the test as

21 requiring the moving party to demonstrate either (1) a

22 combination of probable success on the merits and the possibility

23 of irreparable injury or (2) that serious questions are raised

24 and the balance of hardships tips in its favor.  These two

25 formulations are not inconsistent.  Rather, they represent two

26 points on a sliding scale in which the required degree of

27 irreparable harm increases as the possibility of success

28 decreases.  Roe v. Anderson, 134 F.3d 1400, 1402 & n. 1 (9th Cir.

4

1  1998), aff'd, Saenz v. Roe, 526 U.S. 489 (1999).

2  **ANALYSIS**

3  **I.   Irreparable Injury**

4  According to respondents, the Ninth Circuit requires a

5  military plaintiff seeking preliminary injunctive relief against

6  the military to demonstrate "circumstances that are genuinely

7  extraordinary." Hartikka V. United States, 754 F.2d 1516,1518

8  (9th Cir. 1985) (quoting Sampson v. Murray, 415 U.S. 61, 91-92

9  (1974).

10  Petitioner argues that the heightened standard adopted by

11  the Ninth Circuit in Hartikka is inapplicable because this case

12  does not involve the military's "internal personnel decisions."

13  See e.g., Makua v. Rumsfeld, 163 F. Supp. 2d 1202 (D. Hawaii

14  2001)(applying traditional test in granting preliminary

15  injunctive relief to prevent military from conducting training at

16  a military reservation.)  In support, petitioner cites two

17  similar district court cases from the Fourth Circuit that applied

18  the traditional irreparable injury requirement in cases

19  challenging involuntary mobilizations. Parrish v. Brownlee, 335

20  F. Supp. 2d 661 (E.D. N.C. 2004); Irby v. United States, 245 F.

21  Supp. 2d 792 (E.D. Va. 2003).

22  The court need not resolve which standard applies, because

23  petitioner can satisfy neither test.  Petitioner is enlisted in

24  the military until May of 2005.  There is no dispute that, until

25  that time, petitioner is subject to activation and deployment.

26  While the court readily acknowledges that such deployment is

27  fraught with great personal risk, the order of deployment to Iraq

28  during the course of voluntary enlistment is not the gravamen of

1  petitioner's claim for injunctive relief.  Rather, it is the
2  involuntary extension of his enlistment beyond May 1, 2005 under
3  the military's stop-loss policy.  Any injury to petitioner
4  related to that challenge can only commence in May of 2005  when
5  his term of enlistment expires.

6      Petitioner offers no legal basis to this court to enjoin
7  petitioner's deployment in order to resolve his challenge to the
8  stop-loss policy.  While petitioner concedes he is subject to
9  activation and deployment until the end of his enlistment in May
10 of 2005,[6] petitioner argues that the orders under which he is
11 being deployed are invalid because they illegally extend his
12 enlistment.  Petitioner concludes that, if the order is invalid,
13 he cannot be called to active duty under such order, either
14 during the period of his enlistment or afterward. (Reply at 5.)

15     The court disagrees with petitioner's analysis.  The
16 question before the court is whether it is necessary to prevent
17 petitioner's deployment in order to avoid irreparable injury
18 pending resolution of this case on the merits.  Initially, the
19 court notes that the status quo here is that petitioner is an
20 enlisted member of the National Guard, subject to activation.
21 Thus, to preserve the status quo, the court should not disrupt
22 petitioner's activation during a period when he is admittedly
23 subject to such activation, pending the court's determination of
24 the merits of this case.

25

26     [6]  During oral argument, counsel for petitioner asserted
   that he would reserve the right to challenge such an order.
27 However, any such challenge would need to raise separate grounds
   not raised here which relate solely to the extension of his
28 enlistment.

6

1    Nor do the cases cited by petitioner support his position.

2  Illustrative is <u>Scaggs v. United States</u>, 396 U.S. 1206 (Douglas,

3  Circuit Justice 1969), in which the Court granted an army

4  reservist's petition for habeas corpus and released him from the

5  custody of the Army pending resolution of his appeal.  However,

6  the petitioner in <u>Scaggs</u> was situated quite differently than

7  petitioner here.  In that case, the petitioner was ordered to

8  active duty for a period beyond his enlistment contract as a

9  result of an alleged failure to comply with military orders to

10  "join a unit of the Ready Reserve and attend regular drills."

11  <u>Id.</u>   The petitioner challenged not just the extension of his

12  enlistment, but the *grounds for the order to active duty itself*,

13  which he argued was "punitive and unauthorized."  <u>Id.</u>

14  Consequently any time the petitioner spent on active duty would

15  cause immediate injury.[7]  Here, by contrast, petitioner does not

16  raise a challenge to the grounds for his *activation*, which was

17  attendant to the mobilization of his entire unit; he challenges

18  the *extension* of personal his enlistment.  Thus, unlike the

19  petitioner in <u>Scaggs</u>, his injury does not commence with

20  activation, it occurs when his enlistment expires.[8]

21  _____

22  [7]    The court also notes that the petitioner in <u>Scaggs</u>
   sought a Writ of Habeas Corpus.  Consequently, the court did not
   grant injunctive relief, and did not address the irreparable
23  injury requirement.

24  [8]    The remaining cases cited by petitioner are
   distinguishable on similar grounds.  <u>See</u> <u>Patton v. Dole</u>, 806 F.2d
25  24 (2d Cir. 1986) (granting injunctive relief to prevent
   involuntary induction into Navy by former midshipman at Merchant
26  Marine Academy who had resigned from academy); <u>Kudley v. Hollo</u>,
   431 F. Supp. 470 (N.D. Ohio 1976) (granting temporary restraining
27  order to prevent Army reservist's call up to active duty for
   unexcused absences); <u>Walsh v. Local Bd. No. 10</u>, 305 F. Supp. 1274
28  (S.D.N.Y. 1969) (granting injunctive relief to prevent

7

1   Moreover the balance of hardships tips strongly in favor of

2   respondents.   Permitting petitioner to avoid deployment, *during a*

3   *period he admittedly is subject to such deployment*, would set a

4   troubling precedent which could impede the military's ability to

5   mobilize full-strength units were other similarly situated

6   soldiers to file similar challenges.

7   From a practical standpoint, there is no impediment to

8   petitioner's deployment.   Respondents concede that the court will

9   retain jurisdiction over this matter after petitioner is

10  deployed, and agree that petitioner can be called back from Iraq

11  if this court so orders.   If petitioner prevails, his period of

12  active duty will end in May of 2005; if petitioner's challenge is

13  unsuccessful, he will remain on active duty under the military's

14  stop-loss policy.   Until that time, the military can deploy

15  petitioner as it deems proper.

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  _____

28  petitioner's involuntary induction into the military).

8

1

**CONCLUSION**

2        In conclusion, petitioner has failed to demonstrate that he

3   will suffer any immediate irreparable injury if injunctive relief

4   is not granted.  Consequently, petitioner's motion for

5   preliminary injunction is DENIED.  Because the merits of the case

6   are well developed in the papers previously filed, and the court

7   finds further oral argument will not be of material assistance,

8   the court will provide respondent with an opportunity to submit a

9   surreply, and thereafter issue a final written order on the

10  merits of petitioner's claim.

11       IT IS SO ORDERED.

12  DATED: November 5, 2004

13                                    _____
                                      FRANK C. DAMRELL, Jr.
14                                    UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
for the
Eastern District of California
November 8, 2004


* * CERTIFICATE OF SERVICE * *


2:04-cv-02080


Doe

    v.

Secretary of Defense

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  November 8, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


    Joshua Nathan Sondheimer              MP/FCD
    Law Offices of Michael S Sorgen
    240 Stockton Street
    Ninth Floor
    San Francisco, CA  94108

    Joseph E Maloney
    United States Attorney
    501 I Street, Suite 10-100
    Sacramento, CA  95814

    Matthew - Lepore
    GOVT ATTORNEY
    United States Department of Justice
    Civil Division
    PO Box 883
    Washington, DC  20044


                                     Jack L. Wagner, Clerk

                          BY: _____
                              Deputy Clerk